IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division



FILED
JUN 21 2016
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>Max Alberto Estrada-Linares )<br>   a/k/a "Gueva" )<br>   a/k/a "Ernesto Che" )<br>   a/k/a "Guevera" )<br>   a/k/a "Juan De Arco" )<br>   a/k/a "Licenciada Bicford Castillo" )<br>   a/k/a "Bicford" )<br>   a/k/a "Juan Ernesto," )<br>)<br>Edgar Antonio Quinonez-Salazar, )<br>   a/k/a "Silverio Silva Pacheco" )<br>   a/k/a "Silverio Silva" )<br>   a/k/a "Pacheco" )<br>   a/k/a "Pablo" )<br>   a/k/a "Mexican Boss," )<br>)<br>Paulo Cesar Montenegro-Arevalo, )<br>   a/k/a "Lotus" )<br>   a/k/a "Cesar" )<br>   a/k/a "Shelby" )<br>   a/k/a "Memphis," )<br>)<br>Brayan Alexander Gramajo-Jolomna, )<br>   a/k/a "Mario Cambara" )<br>   a/k/a "Nelly" )<br>   a/k/a "Jess," )<br>)<br>Elkin Perez-Amezquita, )<br>   a/k/a "Musarana Reforzado" )<br>   a/k/a "Cachaman Reforzada" )<br>   a/k/a "Ganadero," )<br>)<br>and )<br>)<br>) | **UNDER SEAL**<br><br>No. 3:16CR67<br><br>Count 1: 21 U.S.C. §§ 963 and 959(a)<br>(Conspiracy to Distribute Five Kilograms or<br>More of Cocaine, Knowing and Intending<br>that it would be Unlawfully Imported into<br>the United States)<br><br>21 U.S.C. §§ 853 and 970<br>Forfeiture Allegation |

1

Marco Andreo Lombana-Moreno,  )
    a/k/a "8Valentino"  )
    a/k/a "Valentino46"  )
    a/k/a "Valentino,"  )
                             )
*Defendants.*

June 2016 Term – at Richmond, Virginia

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

## GENERAL ALLEGATIONS

Unless otherwise specified, at all times relevant to this Indictment:

1. Max Alberto ESTRADA-Linares ("ESTRADA"), a/k/a "Gueva," a/k/a, "Ernesto Che," a/k/a "Guevera," a/k/a "Juan De Arco," a/k/a "Licenciada Bicford Castillo," a/k/a "Bicford," a/k/a "Juan Ernesto," was a resident of Guatemala. ESTRADA was a leader and member of a Central American drug trafficking organization (the "DTO") responsible for brokering and organizing the distribution and transportation of multiple kilograms of cocaine in Costa Rica, Guatemala, Mexico, and other Central American countries for ultimate importation into the United States.

2. Edgar Antonio QUINONEZ-Salazar ("QUINONEZ"), a/k/a "Silverio Silva Pacheco," a/k/a "Silverio Silva," a/k/a "Pacheco," a/k/a "Pablo," a/k/a the "Mexican Boss," was a resident of Mexico. QUINONEZ was a leader and member of the DTO and was responsible for brokering and organizing the distribution and transportation of multiple kilograms of cocaine in Costa Rica, Guatemala, Mexico, and other Central American countries for ultimate importation into the United States.

2

3. Paulo Cesar MONTENEGRO-Arevalo ("MONTENEGRO"), a/k/a "Lotus," a/k/a "Cesar," a/k/a "Shelby," a/k/a "Memphis," was a resident of Guatemala. MONTENEGRO was a member of the DTO and was responsible for the transportation and purity testing of multiple kilograms of cocaine. MONTENEGRO routinely transported and coordinated the distribution of multi-kilogram loads of cocaine in Guatemala, and conducted purity tests of cocaine that the DTO was considering for purchase and/or resale.

4. Brayan Alexander GRAMAJO-Jolomna ("GRAMAJO"), a/k/a "Mario Cambara," a/k/a "Nelly," a/k/a "Jess," was a resident of Guatemala. GRAMAJO was a member of and the bookkeeper for the DTO. GRAMAJO was responsible for documenting the amounts and brands of cocaine owned and distributed by the DTO, and tracking and coordinating payments to cocaine brokers, transporters and members of the DTO.

5. Elkin PEREZ-Amezquita ("PEREZ"), a/k/a "Musarana Reforzado," a/k/a "Cachaman Reforzada," a/k/a "Ganadero," was a resident of Costa Rica. PEREZ was a member of the DTO and was responsible for coordinating the distribution and transportation of multiple kilograms of cocaine from Costa Rica to and through Guatemala and other Central American countries for ultimate importation into the United States.

6. Marco Andreo LOMBANA-Moreno ("LOMBANA"), a/k/a "8Valentino," a/k/a "Valentino46," a/k/a "Valentino," was a resident of Costa Rica. LOMBANA was an independent narcotics broker who worked with the DTO to coordinate the transportation and distribution of multiple kilograms of cocaine in Costa Rica and other Central American countries for ultimate importation into the United States.

## COUNT ONE

### (Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing and Intending that it would be Unlawfully Imported into the United States)

7.   Paragraphs 1 through 6 of this Indictment are incorporated herein by reference.

8.   From in or about June 2015, and continuing through at least in or about June 2016, the exact dates being unknown to the Grand Jury, in Colombia, Costa Rica, Guatemala, Mexico, and elsewhere, and in an offense begun and committed outside the territorial jurisdiction of the United States, the defendants, Max Alberto ESTRADA-Linares, Edgar Antonio QUINONEZ-Salazar, Paulo Cesar MONTENEGRO-Arevalo, Brayan Alexander GRAMAJO-Jolomna, Elkin PEREZ-Amezquita, and Marco Andreo LOMBANA-Moreno, whose point of entry into the United States will be in the Eastern District of Virginia, and others, known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree to commit the following offense against the United States: to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a) and 960.

### OBJECT OF THE CONSPIRACY

9.   It was the object of the conspiracy to distribute cocaine in Central America for ultimate importation into the United States.

### MANNER AND MEANS OF THE CONSPIRACY

10.   In order to further the conspiracy and to effect its illegal object, the conspiracy was carried out by way of the following manner and means, among others:

4

   a. The defendants and their co-conspirators brokered the purchase of cocaine from suppliers in cocaine producing countries such as Colombia for sale to buyers in Mexico, who ultimately imported the cocaine to the United States.

   b. The defendants and their co-conspirators coordinated the transportation and distribution of hundreds of kilograms of cocaine through Central America and Mexico, including approximately 530 kilograms of cocaine that was seized on a boat located off the coast of Costa Rica on or about March 8, 2016; at least 55 kilograms of cocaine that was transported from Costa Rica through Nicaragua between on or about February 17, 2016, and on or about March 29, 2016; and at least 230 kilograms of cocaine that was seized in Guatemala between on or about May 19, 2016, and on or about May 24, 2016.

   c. The defendants used air, land and maritime routes to transport cocaine through Costa Rica, Guatemala, Mexico, and other Central American countries.

   d. The defendants used Global Positioning System (GPS) tracking devices to track the location of loads of cocaine owned or being transported by the DTO.

   e. The defendants communicated with each other regarding their drug-trafficking activities and sent photographs to each other of various brands of cocaine being transported and distributed by the DTO.

   f. The defendants regularly tested the purity of kilograms of cocaine being considered for purchase and/or resale.

   g. The defendants arranged for the transportation of drug proceeds from the United States to Central America and from Central America to Colombia. These proceeds were in the form of United States currency.

(All in violation of Title 21, United States Code, Section 963).

## FORFEITURE ALLEGATION

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants are hereby notified that if convicted of the offense charged in Count One of this Indictment, they shall forfeit any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of the offenses charged; and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offenses charged.

If the property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with Title 21, United States Code, Section 853 and 970).

A TRUE BILL

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office

_____
FOREPERSON

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____
Erik S. Siebert
Peter S. Duffey
David V. Harbach, II
Assistant United States Attorneys